UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-140-TBR

TERRY MCINTOSH D/B/A
911FREEPRESCRIPTIONCARD.COM                                              Plaintiff,

v.

DATA RX MANAGEMENT, INC., ET AL.,                                        Defendants.

**MEMORANDUM OPINION**

This matter is before the Court upon the Motion to Dismiss of Defendants Danny A. Toth, Brian Vossler, Craig Barker, and Data RX Management, Inc. (collectively "Data RX Management" or "the Company"). (Docket No. 5.) Plaintiff Terry McIntosh then filed a documented entitled "Motion to Dismiss Defendant's Motion to Dismiss." (Docket No. 6.) Although the governing civil rules do not provide for such a motion, the Court will construe this filing as a motion seeking to amend Plaintiff's original Complaint and will consider the contents of both documents. Data RX Management submitted a response, which will be construed as an amended Motion to Dismiss. (Docket No. 7). McIntosh then submitted a "Response to Defendant's Continued Misdirection of Claim" in further support of his previous filings, (Docket No. 8), to which Data RX Management has responded (Docket No. 9).

This matter is now ripe for adjudication. For the reasons that follow, Data RX Management's Motion to Dismiss will be GRANTED.

**BACKGROUND**

Data RX Management processes payments made with prescription savings cards on behalf of hundreds of companies. Among its clients are Donald Snider, who owns Free RX

1

Discount Drug Card. Snider distributes his cards, the Company processes the resultant claims, and both earn money from the processing fees remitted by various pharmacies. (Docket No.7 at 2.)

Seeking to distribute as many cards as possible, Snider contracted with a number of individuals to expand his business.[1] Snider and McIntosh formed one such contract. McIntosh's own business, Free Prescription Card Data RX, solicits associates to purchase and distribute pharmacy cards. (Docket No. 1, Complaint, at Introduction.) McIntosh alleges that Snider agreed to give him a portion of the processing fees associated with any cards that McIntosh distributed. When he learned that Snider was not making the agreed upon payments, McIntosh sued Snider in McCracken Circuit Court and won a default judgment. McIntosh has filed neither a garnishment nor any other type of enforcement action related to the Snider state court proceeding, and the Company was not a party to it. (*See* Docket No. 5, Exhibit A.)

McIntosh now alleges that the Company intentionally defrauded him by agreeing to "restore his business"—i.e., allocate customers from Snider's account to his own—once he obtained a judgment against Snider. McIntosh explains that he would have included the Company in his state court action but for this promise. (Docket No. 1-1 at 7.) McIntosh argues that the state court judgment obligate the Company to redirect Snider's profits to him instead, regardless of the fact that this would cause the Company to breach its contract with Snider. McIntosh further alleges that the Company and Snider have conspired to defraud him by

---

[1] Data RX Management was not a party to any such contracts.

2

soliciting his existing clients and "enticing them with higher commissions and free cards." (Docket No. 1-1 at 9.)[2]

McIntosh's complaint does not allege that the Company itself owes him money. Rather, he demands that the Company remit Snider's indebtedness to him. (Docket No. 1, Complaint, at Introduction.)[3] McIntosh insists that this lawsuit is not an attempt to collect the money owed to him by Snider or reimburse him for any loss he incurred; rather, he seeks punitive damages in an effort to deter the Company from similar conduct in the future. (Docket No. 6-1 at 2.)

Although the parties do not dispute that Data RX Management does not employ Snider, McIntosh alleges that because Data RX Management "authorizes and collaborates with Mr. Snider to solicit business," Snider is effectively an agent of Data RX Management. (Complaint at ¶ 5.) Data RX Management denies that Snider was authorized to commit Data RX to a contract or sign a contract in Data RX Management's name. (Docket No. 5-1 at 1-2.)

**STANDARD**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed R. Civ. P. 12(b). When

---

[2] When Co-Defendants Vossler and Toth learned that Snider was improperly withholding payments to McIntosh, they contacted Snider but achieved no resolution. Vossler then explained to McIntosh that Snider was an independent contractor, not an employee or agent of the company. (*See* Docket Nos. 6-2 to 6-14.)

[3] McIntosh initially sought injunctive relief in addition to money damages, asking the Court to order that Data RX Management "[c]ease and [d]esist soliciting, accepting, processing, and profiting" from new business accounts generated by Snider's solicitation of McIntosh's business and demanding that the Company direct Snider's compensation to McIntosh instead. (Docket No. 1, Complaint, at Introduction.) McIntosh has, however, withdrawn this Claim. (*See* Docket No. 6-1 at 2-)

considering a Rule 12(b)(6) motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2).

In addition, federal courts hold *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). Accordingly, this Court is not required "to explore exhaustively all potential claims of a *pro se* plaintiff," as this would "transform the district court

from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278. Only well-pled factual allegations contained in the complaint and amended complaint are considered on motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

It is against these standards that the Court reviews the facts.

## DISCUSSION

**I.     McIntosh's claims survive the Company's argument that he lacks standing.**

The Company first argues that McIntosh suffers no actual or imminent injury, as his state court judgment against Snider remains pending and he has filed no garnishment action. (*See* Docket No. 5-3, *Snider v. McIntosh* Docket Sheet.) The Company characterizes McIntosh's injury as speculative, as it is based merely on the concern that he will be unable to collect on his state court judgment against Snider.

In order to satisfy the "case or controversy" requirement of Article III of the United States Constitution, a plaintiff must demonstrate standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). If a party lacks standing, a court must issue an order of dismissal, as it has no jurisdiction over the matter. *Greater Cincinnati Coalition, et al. v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995) (citing *DeBolt v. Espy*, 47 F.3d 777, 779 (6th Cir. 1995)). The Supreme Court established the applicable test for determining whether a plaintiff has standing in *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 120 (2000). The Court held that a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

> action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

The Company is correct that McIntosh must establish an "actual or imminent, not conjectural or hypothetical" injury—one of the "irreducible constitutional minimum[s]" of standing to raise a claim in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560. However, the Court notes that each element of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Consequently, at the pleading stage, "general factual allegations of injury resulting form the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

At this stage, a complaint's factual allegations are to be taken as true and must be construed in favor of the complainant. *See Sutton v. St. Judge Med. S. C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005). Given this lenient standard, McIntosh has satisfied the elements of Article III standing. The Court will now turn to the merits of his Complaint.

## II. Counts II, IV, and VIII are unrecognized under Kentucky law.

McIntosh initially asserted a number of tort claims; however, in subsequent fillings, he conceded that his claims for Accessory to Fraud (Count 2) and Accessorial Liability to Further the Conspiracy (Count 4) do not exist under Kentucky law. (*See* Docket No. 6-1 at 11.) Accordingly, these claims will be dismissed.

Count VIII of McIntosh's Complaint points to Data RX Management's "unclean hands."[4] This count fails to state a claim. The unclean hands doctrine does not create a cause of action; rather, it merely prevents a plaintiff with unclean hands from recovering from a defendant. *See, e.g.*, *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 797 (6th Cir. 2009). Because this doctrine does not create a basis for affirmative relief, Count VIII will also be dismissed.

## III.  McIntosh's remaining claims lack legal or factual basis.

### a.  Fraud

The gravamen of McIntosh's allegations points to varieties of fraud. In Kentucky, a fraudulent misrepresentation claim requires proof of six elements: (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (citing *United Parcel Service Co. v. Rickert*, 996 S.W.3d 464, 468 (Ky. 1999); *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 583 F.3d 239, 248 (6th Cir. 2012)).

A plaintiff's pleading of fraud or mistake is subject to the heightened pleading standard required by Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, the Sixth Circuit requires the allegations to contain the 'time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the

---

[4] McIntosh's Complaint titles this claim "Egregious, Reprehensible Conduct/Unclean Hands." The Court notes that "egregious, reprehensible conduct" is neither a claim nor an affirmative defense.

7

fraud.'" *Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, 2007 WL 2903231, at *6 (E.D. Ky. Sept. 27, 2007) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001)).

Here, McIntosh fails to explain how any misstatements were fraudulent. The Company's alleged misrepresentation—that McIntosh was legally required to obtain a default judgment before the Company could act—accurately describes the law. *See* 30 Am. Jur. 2d *Executions and Enforcement of Judgments* § 1. That the Company did not elaborate upon the legal complexities of converting such a judgment into an order authorizing it to redirect Snider's payment to McIntosh does not constitute fraud.

Additionally, McIntosh has not identified how the Company's statement injured him. Although he states general conclusions that Data RX Management's actions caused him to suffer financial loss, he demonstrates no casual relationship between his injury and the Company's conduct. McIntosh alleges that he is owed money, but does not claim that the Company owed him that money; rather, he insists that the Company recompense him for the judgment that Snider owes. (Complaint at ¶ 1.) Because he alleges that Snider, not the Company, has violated the state court order, McIntosh presents no causal relationship between his loss of royalty payments and the Company's conduct.

Furthermore, McIntosh has obtained a legal remedy for the wrong he suffered. The state court judgment totals almost $23,000 through May 2013, and the award is ongoing. (*See* Docket No. 6-13 at 4 ("It is further ORDERED, on Plaintiff's request, that the Defendant serve upon Plaintiff within ten (10) days of the end of each month the sales transactions occurring during the

month and that Defendant comply with the agreement entitling Plaintiff to his payment.").) In the instant action, McIntosh seeks payment from the Company for the processed claims—but the state court judgment requires Snider to make such payment. He has, therefore, already been made whole for this injury.

Finally, McIntosh fails to set forth facts showing either direct evidence or a strong evidence of fraudulent intent; neither does he set forth facts showing that the Company had both motive and opportunity to commit fraud. Because McIntosh has made no showing that the Company acted with oppression, fraud, or malice, he is not entitled to punitive damages. *See Anderson v. Wade*, 33 Fed. Appx. 750, 757 (6th Cir. 2002). For the reasons discussed above, McIntosh's complaint fails to satisfy the traditional pleading standards for fraud under Rule 9(b). His fraud claim must be dismissed.

### b. Gross Negligence (Count III)

McIntosh next alleges that Data RX Management was grossly negligent in ignoring his complaints and failed to prevent him from incurring damages. (Docket No. 1-1 at 10.) His initial Complaint states that the Company ignored his complaints and failed to take adequate action to protect him. (Docket No. 1-1 at 10.) When confronted with the Motion to Dismiss, he failed to clarify the legal origin or nature of the duty owed to him by the Company; rather, he pointed to the "moral duty to protect Plaintiff and others from loss, a duty to be honest, and a duty to perform promise to restore Plaintiff's business to him." (Docket No. 6-1 at 12.) He also attests that "the law holds a party responsible in the face of knowledge of wrongdoing." (Docket No. 8 at 5.)

McIntosh is, however, mistaken. The Company was not subject to either a duty to protect or a duty of honesty. *See James v Wilson*, 95 S.W.3d 875, 890 (Ky. App. 2002). Moreover, the alleged obligation to perform a promise would arise only had a contract been formed between the Company and McIntosh. Simply put, the Company owed no duty to McIntosh. Furthermore, no allegations support any claim for gross negligence under Kentucky law.[5] Because McIntosh's negligence claims fail to state a plausible claim for relief, the Company's motion to dismiss the gross negligence claim is granted.

### c. Trade Name Infringement/Unfair Competition (Count V)

McIntosh's fifth count alleges trade name infringement and unfair competition, asserting that the Company collaborated with Snider "to accept, process, and profit from Rx cards bearing name of the Plaintiff after being made fully aware of prevailing circumstances." (Docket No. 1-1 at 11.) McIntosh points to no legal authority supporting this claim, does not indicate whether he pursues it under state or federal law, and fails to identify the trade name that is allegedly being infringed.

"Unfair competition consists of either (1) injuring the plaintiff by taking his business or impairing his good will, or (2) unfairly profiting by the use of the plaintiff's name, or a similar one, in exploiting his good will." *Covington Inn Corp. v. White House Tavern, Inc.*, 445 S.W.2d 135, 139 (Ky. App. 1969) Furthermore, "[u]nderlying the whole theory [of unfair competition] is the matter of actual or intended deception of the public for business reasons." *Id.*

---

[5] A gross negligence claim must establish (1) that Data RX Management owed a duty of care to him, (2) that the Company breached that duty, and (3) that the breach proximately caused his damages. *See Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1992)). McIntosh must demonstrate "an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed that the act was malicious or willful." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51 (Ky. 2003).

McIntosh has made no showing that the Company deceived the public through a trade act. Indeed, the Company simply processes prescription cards—it does not solicit the public. Accordingly, the Court will dismiss this claim.

### d. Tortious Interference with Business Relationships (Count VI)

McIntosh's sixth claim alleges that the Company supported Snider's solicitation of his own clients during the pendency of the state court litigation, enticing Snider to breach his contract with McIntosh. (Docket No. 1-1 at 11.)

Kentucky law protects contractual relations from improper interference. *See Brooks v. Patterson*, 29 S.W.2d 26 (1930); *Derby Road Building Co. v. Commonwealth*, 317 S.W.2d 891 (Ky. 1958); *Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855 (Ky. 1988).

> To prevail on a tortious interference of contact claim, the plaintiff must plead and prove six elements: (1) the existence of a contract; (2) the tortfeasor's knowledge of the contract; (3) the tortfeasor's intent to cause the breach of the contract; (4) the tortfeasor caused one party to the contract to breach the contract; (5) the breach caused damages to the non-breaching party to the contract; and (6) the tortfeasor acted with malice toward the non-breaching party to the contract.

*Monin v. Wal-Mart Real Estate Bus. Trust*, 2008 WL 352346, at *1 (Ky. App. Feb. 8, 2008).

McIntosh's claim lacks almost all of these elements. Instead, he alleges that Snider "siphon[ed] claim numbers, therefore money, from Plaintiff and his associates" and that Snider "confiscate[d] Plaintiff's business database without authorization . . . ." (Docket No. 6-1 at 8.) These allegations are focused on the conduct of Snider, not the Company. There is no indication that Data RX Management acted with any animosity toward McIntosh or against its own legitimate and lawful business interests. Furthermore, McIntosh points to no pre-breach conduct

11

that would suggest the Company's intent to cause a breach. Therefore, this claim must be dismissed.

### e. Unjust enrichment (Count VII)

To bring a viable unjust enrichment claim, a plaintiff must show three elements. "First, a benefit must be conferred upon the defendant at the plaintiff's expense. Second, the benefit must result in an appreciation by the defendant. Finally, acceptance of the benefit under circumstances which render its retention, by the defendant without payment of the value thereof, inequitable." *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987) (citations omitted).

McIntosh has made no showing that a benefitted was conferred upon the Company at his expense. The Company remitted an appropriate portion of its processing fees to Snider; Snider allegedly agreed to share these profits with his independent contractors, including McIntosh. The Company was not obligated to remit payment to Snider's independent contractors. If Snider withheld payment from McIntosh, it is Snider who was unjustly enriched—not the Company. Therefore, the Court will dismiss McIntosh's unjust enrichment claim.

## CONCLUSION

Having considered the parties' respective arguments and being otherwise sufficiently advised, the Court finds that McIntosh's claims against Data RX Management, even when construed in the light most favorable to him, fail to state any claims upon which relief may be granted. Therefore, the Court will GRANT the Company's Motion to Dismiss and DISMISS McIntosh's Complaint. An appropriate Order will issue concurrently with this Opinion.